**RACHELLE TAYLOR GOLDEN 295385**
Rachelle@GoldenADADefense.com
**GOLDEN LAW A.P.C.**
1100 W Shaw Avenue, Suite 132
Fresno, California 93711
Telephone: (559) 878-3521

Attorneys for Defendant:
HPC BLACKSTONE INVESTORS, LP

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

* * *

| | |
|---|---|
| GEORGE AVALOS, an individual  <br><br>  Plaintiff,  <br><br> vs.  <br><br> HPC BLACKSTONE INVESTORS, LP, a California limited partnership; and DOES 1-10, inclusive  <br><br>  Defendants. | NO. 1:20-cv-01385-DAD-SKO  <br><br> **DEFENDANT, HPC BLACKSTONE INVESTORS, LP'S, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS UNDER F.R.C.P. RULE 12(b)(1) AS TO PLAINTIFF'S COMPLAINT AND REQUEST TO DECLINE SUPPLEMENTAL JURISDICTION PURSUANT TO 28 U.S.C. § 1367(c).** <br><br> Date: June 15, 2021 <br> Time: 9:30 a.m. <br> Courtroom: 5, 7th Floor <br><br> Judge: Honorable Dale A. Drozd |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 1

  A. PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S COMPLAINT (F.R.C.P. 12(B)(1)) ................................................................................................................................ 1

      1. The Extrinsic Evidence Shows that the Alleged Barriers Identified within the Complaint are Moot, and are Structurally Permanent and Cannot Reasonably be Undone ................................................................................................................... 3

      2. The Permanent Voluntary Cessation of the Alleged Barriers Moot Plaintiff's Complaint ................................................................................................................ 6

  B. THIS COURT SHOULD NOT RETAIN SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S REMAINING STATE LAW CLAIMS. ..................................................... 8

III. SHOULD DEFENDANT PREVAIL, THE PRESENT CIRCUMSTANCES ALLOW FOR RECOVERY OF ITS ATTORNEYS' FEES AND COSTS. ....................................... 8

IV. CONCLUSION .................................................................................................................. 9

# TABLE OF AUTHORITIES

**Cases**

Bayer v. Neiman Marcus Grp., 861 F.3d 853, 862 (9th Cir. 2017) ................................................. 2

Bercovitch v. Baldwin 191 F.3d 8, 11 (1st Cir. 1999) ...................................................................... 9

Foster v. Carson, 347 F.3d 742, 745 (9th Cir. 2003) ....................................................................... 2

Friends of the Earth, Inv. v. Laidlaw Entl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000) ......... 3, 8

Independent Living Resources v. Oregon Arena Corp. 982 F.Supp. 698 (D. Oregon 1997) ......... 7

Jones v. Giles, 741 F.2d 245, 248 (9th Cir. 1984) ........................................................................... 1

K2 Am. Corp. v. Roland Oil & Gas, 653 F.3d 1024, 1027 (9th Cir. 2011) ................................ 1, 2

Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994) ..................................................... 2

Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014) ............................................................ 2, 3

Miller v. California Speedway Corp. 536 F.3d 1020, 1027-1028 (9th Cir. 2008) .......................... 7

Oliver v. Ralphs Grocery Co., 654 F.3d 903, 905 (9th Cir. 2011) .............................................. 3, 7

Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978) ................................................ 1

Pickern v. Best Western Timber Cove Lodge Marina Resort 194 F.Supp.2d 1128, 1133 (E.D. Cal. 2002) ..................................................................................................................................... 8

Pitts v. Terrible Herbst, Inc., 653 F.3d 1081, 1086 (9th Cir. 2011) ................................................ 2

Powell v. McCormack, 395 U.S. 486, 496 (1969) ........................................................................... 2

Safe Air For Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) ...................................... 2, 3

Salter v. Quality Carriers, Inc., 974 F.3d 959, 964 (9th Cir. 2020) ................................................ 3

Southcentral Found. v. Alaska Native Tribal Health Consortium, 983 F.3d at 411, 418-19 (9th Cir. 2020) ........................................................................................................................................ 3

United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203 (1968) ....................... 6

White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000) ..................................................................... 2, 3

Wood v. City of San Diego, 678 F.3d 1075, 1083 n.2 (9th Cir. 2011) ............................................ 2

**Statutes**

42 USC § 12205 ............................................................................................................................... 8

Fed. R. Civ. Pro. 12(b)(1) ................................................................................................................ 1

ii
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## I. INTRODUCTION

Plaintiff, George Avalos's ("Plaintiff") allegations within his Complaint are moot and this Court lacks jurisdiction over the sole federal cause of action – the Americans with Disabilities Act ("ADA"). Plaintiff's Complaint against Defendant, HPC Blackstone Investors ("Defendant"), alleges two "barriers"[1]. First, he alleged that "there was no designated parking spaces available for persons with disabilities that complied with the 2010 Americans with Disabilities Act Accessibility Guidelines ("ADAAG") on August 31, 2020." Document 1, ¶ 10:15-17. Second, he alleged that, "a built up curb ramp [ ] project[ed] from the sidewalk and into the access aisle (Section 406.5)," and that "the curb ramp [wa]s in excess of the maximum grade allowed by ADAAG specifications (Section 406.1)." Document 1, ¶ 11:19-21.

The Complaint is moot as both alleged "barriers" have been remediated and currently meet the 2019 California Building Code which is a more stringent than the 2010 ADAAG. Declaration of Michael Bluhm ("Bluhm Decl.") ¶¶ 1-7. Therefore, the Court lacks jurisdiction over Plaintiff's Complaint as the only federal claim within Plaintiff's Complaint is moot. Federal Rule of Civil Procedure, Rule 12(b)(1).

## II. ARGUMENT

### A. PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S COMPLAINT (F.R.C.P. 12(B)(1))

Federal Rule of Civil Procedure 12(b)(1) allows for a motion to dismiss based on lack of subject matter jurisdiction. See Fed. R. Civ. Pro. 12(b)(1). It is a fundamental precept that federal courts are courts of limited jurisdiction. Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978); K2 Am. Corp. v. Roland Oil & Gas, 653 F.3d 1024, 1027 (9th Cir. 2011). Limits upon federal jurisdiction must not be disregarded or evaded. Owen Equip., 437 U.S. at 374; Jones v. Giles, 741 F.2d 245, 248 (9th Cir. 1984). "It is presumed that a cause lies outside

---

[1] Defendant does not concede that any of the allegations within the Complaint constitute actual barriers to Plaintiff nor that any condition of the property violated Plaintiff's rights under the Americans with Disabilities Act or any corresponding State law claim. Defendant hereby preserves all affirmative defenses to which it is entitled.

this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994); K2 Am., 653 F.3d at 1027. There are two types of Rule 12(b)(1) motions; it may be a facial inquiry, which confines the inquiry to the four corners of the complaint. Or, it may be a factual inquiry, which permits the court to look beyond the complaint and consider extrinsic evidence. See Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014); Safe Air For Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). In a situation such as this, in which Defendant is making a factual challenge "by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Safe Air for Everyone, 373 F.3d at 1039; see Leite, 749 F.3d at 1121. Contrary to the Court's obligations in other types of motions, in the present Motion, the Court need not presume the truthfulness of the plaintiff's allegations under a factual attack. Wood v. City of San Diego, 678 F.3d 1075, 1083 n.2 (9th Cir. 2011).

Mootness is a jurisdictional issue. Foster v. Carson, 347 F.3d 742, 745 (9th Cir. 2003); White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). The question of a court's subject matter jurisdiction over a claim relating to mootness is to be raised through a Rule 12(b)(1) motion to dismiss. White, 227 F.3d at 1242. "[A] case is moot when the issues are no longer 'live', or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969); Pitts v. Terrible Herbst, Inc., 653 F.3d 1081, 1086 (9th Cir. 2011). That is, if post-filing events resolve the parties' dispute, the court must dismiss the case as moot. Pitts, 653 F.3d at 1087. "The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." Bayer v. Neiman Marcus Grp., 861 F.3d 853, 862 (9th Cir. 2017). Therefore, if "there is no longer a possibility that [a plaintiff] can obtain relief for his claim, that claim is moot and **must** be dismissed for lack of subject matter jurisdiction." Foster, 347 F.3d at 745. Emphasis added.

"Because a private plaintiff can sue only for injunctive relief (i.e., for removal of the barrier) under the ADA, a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim." Oliver v. Ralphs Grocery Co., 654 F.3d

903, 905 (9th Cir. 2011). However, the mere voluntary cessation of illegal activity in response to pending litigation does not necessarily moot a case, unless the party alleging mootness meets their "heavy burden" by showing that the "allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth, Inv. v. Laidlaw Entl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000); Southcentral Found. v. Alaska Native Tribal Health Consortium, 983 F.3d at 411, 418-19 (9th Cir. 2020).

1. **The Extrinsic Evidence Shows that the Alleged Barriers Identified within the Complaint are Moot, and are Structurally Permanent and Cannot Reasonably be Undone**

As noted above, in a factual attack under Rule 12(b)(1), the Court is entitled to consider extrinsic evidence. Leite, 749 F.3d at 1121; Safe Air for Everyone, 373 F.3d at 1039. Indeed, consideration of extrinsic evidence (i.e. evidence beyond the mere allegations in the complaint) is the defining distinction between a "facial attack" and a "factual attack" on subject matter jurisdiction. See Salter v. Quality Carriers, Inc., 974 F.3d 959, 964 (9th Cir. 2020). The Ninth Circuit has expressly held that Rule 12(b)(1), not Rule 12(b)(6), is the proper procedural mechanism for raising a mootness challenge. White, 227 F.3d at 1242. The basis for mootness in this case is based on two "barriers"; there were no designated accessible spaces that met the ADA requirements and that the ramp protruded into the access aisle. The Court should take into its consideration and analysis the declaration of experienced and qualified Certified Access Specialist ("CASp") Mr. Michael Bluhm as allowed for by Leite, 749 F.3d at 1121 and White, 227 F.3d at 1242 and determine that the cause of action under the Americans with Disabilities Act are moot. Decl. Bluhm ¶¶ 1-12, Exhibits A-I.

    i.   *The Designated Accessible Parking Spaces Comply with the 2019 California Building Code, which is More Stringent than the Federal Standard*

It is important to set forth that the 2010 Americans with Disabilities Act Design Standards ("ADAS"), which are created by the Department of Justice – the agency appointed to draft an implement the ADA and, the 2019 California Building Code ("CBC") are the most recent design standards for accessibility. Bluhm Decl. ¶ 8. It is also important to understand that the 2019 CBC meets or exceeds the technical accessibility requirements of the 2010 ADAS as it relates to parking

3
**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

lot accessibility. Bluhm Decl. ¶ 7. The property was remediated to the most current accessibility design standard, which is chapter 11B of the CBC which governs the accessible features and elements of places of public accommodations. Bluhm Decl. ¶ 8.

During the remediation process, Defendant hired Mr. Blum to oversee the work performed on the premises to ensure that the work completed met the most recent technical access requirements of the 2019 CBC. Bluhm Decl. ₱ 6. Mr. Bluhm relied upon his more than 20-years' experience in the design and architectural industry, inclusive of his licensure by the State of California as a CASp, when he consulted with the concrete contractor that performed the permanent remediation of the parking lot at the facility. Bluhm Decl. ₱₱ 1-8.

In the 2019 CBC, section 502.2, it requires that accessible parking spaces shall be a minimum of eighteen feet long (216 inches). Request for Judicial Notice ("RJN") ₱ 1, Ex. B, p. 5; Bluhm Decl. ₱ 11(a), (b), Exhibits A-D. It further provides that a standard accessible parking stall shall be a minimum of nine-feet wide (108 inches), while a van accessible parking space shall be a minimum of twelve-feet (144 inches) wide. RJN ₱ 1, Ex. B, p. 5; Bluhm Decl. ₱ 11(a), (b), Exhibits A-D. The 2010 ADAS, section 502.2, is not as stringent as the 2019 CBC as it only requires that the parking spaces be a minimum of eight-feet wide rather than nine-feet, and that van accessible spaces be eleven-feet wide rather than twelve feet. RJN ₱ 2, Ex. C, p. 7.; Bluhm Decl. ¶ 11(b)(i), Exhibit C, p. 7.

Over the course of roughly four-months, Mr. Bluhm visited the premises on multiple occasions during the time remediation was occurring. Bluhm Decl. ₱ 9. Upon completion of remediation, based upon the measurements that he took during and at the completion of the project, Mr. Bluhm concluded that the facility contains a designated standard accessible parking stall that measures 18-feet long and 9-feet wide as required by the 2019 CBC 11B-502.2. Bluhm Decl. ₱ 11(a), Exhibits A-B, p. 5. Mr. Bluhm also concluded that the facility contains a designated van accessible parking stall that measures 18-feet long and 9-feet wide as required by the 2019 CBC 11B-502.2. Bluhm Decl. ₱ 11(b), Exhibits B, p. 5, and D.

///

///

4
**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

  *ii.* <u>The Improved Access Aisle Meets the Current Applicable Accessibility Guidelines.</u>

The 2019 CBC, section 11B-502.4 provides, "Parking spaces and access aisles serving them shall comply with Section 11B-302. Access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted." Bluhm Decl. ¶¶ 11(c), Exhibits B, p. 6 and E; RJN ¶ 1, Ex. B, p. 6. Slopes shall not exceed 1:48 – which equates to 2.08%. <u>Id.</u> at p. 7. Section 11B-302 provides, "Floor and ground surfaces shall be stable, firm, and slip resistant." RJN ¶ 1, Ex. B, p. 2; Bluhm Decl. ¶ 9. Section 11B-302.3 provides that no openings in the floor or ground surface shall be more than ½ inch in diameter. RJN ¶ 1, Ex. B, p. 2; Bluhm Decl. ¶¶ 11(d), Exhibits B, p. 2, and F. The federal standards are consistent with the California standards. RJN ¶ 2, Ex. C, p. 4; Bluhm Decl. ¶ 11(d), Exhibit C, p. 4.

In the 2019 CBC, section 11B-502.3.1 it provides, "access aisles serving car and van parking spaces shall be 60 inches (1524 mm) wide minimum." Bluhm Decl. ¶ 11(c), Exhibit B, p. 6; RJN ¶ 1, Ex. B, p. 6. Section 502.3.2 provides, "access aisles shall extend the full required length of the parking spaces they serve." <u>Id.</u> The federal standards are consistent with the California standards. <u>Id.</u> at p. 6. While the federal standards do not specify marking and striping requirements (<u>see</u> RJN, ¶ 2, Exhibit C, p. 8, "Advisory 502.3.3 Marking), Section 502.3.3 of the 2019 CBC provides,

> "Access aisles shall be marked with a blue painted borderline around their perimeter. The area within the blue borderlines shall be marked with hatched lines a maximum of 36 inches (914 mm) on center in a color contrasting with that of the aisle surface, preferably blue and white. The words "NO PARKING" shall be painted on the surface within each access aisle in white letters a minimum of 12 inches (305 mm) in height and located to be visible from the adjacent vehicular way." Bluhm Decl. ¶ 11(e), Exhibit B, p. 6; RJN ¶ 1, Ex. B, p. 6.

Here, Mr. Bluhm concluded that the facility contains an access aisle that serves both stalls designated for persons with disabilities - the standard accessible parking stall and the van accessible parking stall. Bluhm Decl. ¶ 11(c), Exhibit E. Mr. Bluhm determined that the access aisle is level with the designated stalls that it serves, it is the same length as the stalls as it serves, and that it does not exceed 2.08% in slope in any direction. <u>Id.</u> After taking measurements of the newly constructed elements, Mr. Bluhm determined that the blue borderlines are visible and were marked with hatched lines which measured to be 36 inches on

center in contrasting color with the surface. Bluhm Decl. ¶ 11(e), Exhibit G. Mr. Bluhm observed the words "NO PARKING" to be painted on the access aisle and measured the letters to be 12-inches in height, which were visible from the adjacent vehicular way. Id. Mr. Bluhm observed the International Symbol of Accessibility on the ground surface within both designated accessible parking stalls in blue and white paint as required by the 2019 CBC. Decl. Bluhm, ¶ 11(f), Exhibits B, p. 6 and G.

Ultimately, Mr. Bluhm concluded that all the improvements made the to designated accessible parking stalls meet the accessibility requirements of the 2019 CBC, rendering Plaintiff's Complaint moot. Dec. Bluhm ¶ 12.

  iii. <u>The Relocated Parking Stall Eliminated the Curb That Used to Protrude into the Access Aisle</u>

Section 11B-406 of the 2019 CBC addresses "curb ramps" and their specific requirements in order to be considered accessible for persons with disabilities. Bluhm Decl. ¶ 11(i), Exhibit B, at pp. 3-4; RJN ¶ 1, Ex. B, pp. 3-4. Of relevance here, Section 11B-406.5.1 provides that, "curb ramps and the flared sides of curb ramps shall be located so that they do not project into vehicular traffic lanes, parking spaces, or parking access aisles." Id. at p. 3. The slope of the curb ramp cannot exceed 1:12 (or 8.33%), the flared sides cannot exceed 1:10 (or 10%), and the width of the curb ramp, excluding any flared sides, must be 48-inches. Id.

Here, Defendant permanently relocated the accessible parking stalls in concrete and created a curb ramp so that it does not protrude into the parking stall and/or access aisle. Bluhm Decl. ¶ 11(i), Exhibit I. All aspects of the curb ramp as described above meet the requirements of the 2019 CBC. Id. The relocation of the designated accessible parking stalls which does not have a protruding ramp addresses the second and last "barrier" in Plaintiff's Complaint.

**2. The Permanent Voluntary Cessation of the Alleged Barriers Moot Plaintiff's Complaint**

As stated hereinabove, in order for Defendant to meet its burden of proof, it has to "absolutely make clear that the alleged wrongful behavior could not reasonably be expected to recur." <u>United States v. Concentrated Phosphate Export Ass'n,</u> 393 U.S. 199, 203 (1968). The

present situation is not unlike the defendant in Independent Living Resources v. Oregon Arena Corp. 982 F.Supp. 698 (D. Oregon 1997) (declined to follow on other grounds, Miller v. California Speedway Corp. 536 F.3d 1020, 1027-1028 (9th Cir. 2008)), in which defendant made a number of modifications after the complaint was filed. In determining whether defendant satisfied its burden that the issues complained of would not recur, the court observed that, "the high cost of litigation and of remedying alleged ADA violations" provided "ample incentive for defendant to take appropriate steps on its own to ensure future compliance with the ADA." Id. at 774. The court further observed that, "the likelihood that – after the conditions have been brought into compliance – plaintiffs will again be subjected to these same (alleged) violations appears to be rather low. That is particularly true of structural modifications, which are unlikely to be altered in the future." Id.

The logic from the Independent Living Court should be applied to the present circumstances. Defendant hired a contractor to saw cut and demolish the then-existing standard non-accessible parking spaces and demolished the concrete curb connecting which connected the standard stalls to the walkway. Bluhm Decl. ¶ 11(i), Exhibit I.  The contractor then installed two new accessible parking stalls (one standard accessible stall and one van accessible stall, connected with an access aisle), in concrete, and applied all the markings and signs required for an accessible parking stalls to meet the current accessibility design standards. Bluhm Decl. ¶ 11, Exhibits A, D, E, F, G, H and I.

"[A] defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim." Oliver, 654 F.3d at 905. The permanent upgrades to the property, which were done in concrete, should convince this Court that Defendant's voluntary actions have met it burden of proof and have permanently mooted this matter. Not only does Mr. Bluhm's testimony support the permanency of the improvements, but the improvements were also expensive. Defendant spent $925.00 for Mr. Bluhm for his consultation services throughout construction Decl. Bluhm, ¶ 13. The cost to Defendant for the permanent improvements by hired contractor Tosted Asphalt was $8,900.00. Declaration of Rachelle Taylor Golden ("Golden Decl.") ¶¶ 1-2, Ex. J. Therefore, the total cost of the project was nearly

ten-thousand dollars - $9,825.00 to be exact. It makes no logical sense that Defendant would remove any of the improvements that have been made as the removal of the work performed would eviscerate their investment into the property and would also re-expose them to a lawsuit such as this one. There is simply no utility or benefit to Defendant by reverting the property back to its original condition. The overwhelming evidence presented should be enough to convince the Court that the "allegedly wrongful behavior could not reasonably be expected to recur," thereby mooting the case. Friends of the Earth, 528 U.S. at 189.

In light of Defendant's permanent elimination of the alleged access-barriers for persons with disabilities, Plaintiff's claim for injunctive relief has lost its character as a present, live controversy of the kind that must exist for the Court to retain subject matter jurisdiction. The Court must therefore dismiss Plaintiff's First Cause of Action within his Complaint with prejudice, as his claim under the Americans with Disabilities Act is moot.

**B.   THIS COURT SHOULD NOT RETAIN SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S REMAINING STATE LAW CLAIMS.**

As Plaintiff's federal cause of action is moot, the only cause of action left for this Court to resolve is Plaintiff's claim under the California Unruh Civil Rights Act. Recognizing that there is a difference between relief available under an ADA claim and a California Unruh Act claim, Pickern v. Best Western Timber Cove Lodge Marina Resort 194 F.Supp.2d 1128, 1133 (E.D. Cal. 2002), held that absent a "showing of extraordinary or unusual circumstance" the court should decline exercising its discretionary supplemental jurisdiction. While initial disclosures have been exchanged and the first round of written discovery has been propounded by Plaintiff, this case is still in its infancy as no depositions have taken place, the scheduling conference has not yet occurred, and Defendant has propounded no discovery. There will be no prejudice to Plaintiff if the Court were to decline supplemental jurisdiction over Plaintiff's state law claim.

**III.   SHOULD DEFENDANT PREVAIL, THE PRESENT CIRCUMSTANCES ALLOW FOR RECOVERY OF ITS ATTORNEYS' FEES AND COSTS.**

According to 42 USC § 12205, in any action commenced under the Title 42, the Americans with Disabilities Act, the Court in its discretion may allow the prevailing party their

attorneys' fees and costs. While it is acknowledged that recovery of a prevailing defendant's attorneys' fees and costs is the exception, the Court should grant defendants' recovery when plaintiff's "suit was totally unfounded, frivolous, or **otherwise unreasonable or that plaintiff continued the litigation after it clearly became so**." Bercovitch v. Baldwin 191 F.3d 8, 11 (1st Cir. 1999). Emphasis added.

Here, on March 22, 2021, Plaintiff was made aware that his claim was moot and requested that as the injunctive relief remedy is no longer available to Plaintiff, a dismissal was requested. Golden Decl., ¶ 3, Exhibit K, pp 5-8. When Defendant offered to send photographs and a declaration of Mr. Bluhm testifying under the penalty of perjury as the evidence to support the mootness of Plaintiff's claim, Plaintiff stated that the declaration would not be sufficient without offering any explanation as to why it would be deficient. Id. On March 23, 2021, as a last-ditch effort to circumvent any other issues that may arise in a Motion to Amend and/or Plaintiff's opposition to this Motion, Defendant invited Plaintiff to meet on site so that he could see for himself that the "barriers" identified within the Complaint had been remediated. Id. at p. 2. As of the filing of this Motion, several weeks later, Defendants have never received any response to its offer of a joint site inspection. Id.

Plaintiff's failure to respond to Defendant's offer and his failure to accept documents which evidence the mootness of his claims render the continuation of his Complaint frivolous and wholly unreasonable. Despite this knowledge, Plaintiff refused to dismiss his Complaint when Defendant refused to settle a mooted claim thereby unnecessarily forcing Defendant to continue to spend considerable time, money and effort defending itself against Plaintiff's Complaint that is unreasonably maintained. Additionally, and more importantly, this Motion ties up precious judicial resources when it is wholly unnecessary to do so. Should Defendant prevail, it respectfully requests that the Court exercise its discretion and award their attorneys' fees and costs.

### IV.   CONCLUSION

This Motion should be granted as Plaintiff's claims in his Complaint are permanently mooted as it now meets the 2019 California Building Code, which is a more stringent standard

than the current federal standards. Furthermore, the law is clear, once the federal claim has been mooted, the Court is without jurisdiction to hear it. As Plaintiff was provided with an opportunity to dismiss the Complaint as after learning that injunctive relief was moot, he continued to unreasonably maintain this action forcing the Court and Defendant to waste resources necessitating the filing of this Motion. Should Defendant prevail in this Motion, it requests its attorneys' fees and costs.

DATED: May 13, 2021                           GOLDEN LAW A.P.C.

                                              By     */s/ Rachelle Taylor Golden*
                                                   RACHELLE TAYLOR GOLDEN
                                                   Attorney for Defendant,
                                                   HPC BLACKSTONE INVESTORS, LP

## PROOF OF SERVICE

I am employed in the County of Fresno, California; I am over the age of eighteen years and not a party to the within cause; my business address is: 1100 W Shaw Avenue, Suite 132, Fresno, CA 93711.

On May 13, 2021, I served the foregoing document(s) described as:

**DEFENDANT, HPC BLACKSTONE INVESTORS, LP'S, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS UNDER F.R.C.P. RULE 12(b)(1) AS TO PLAINTIFF'S COMPLAINT AND REQUEST TO DECLINE SUPPLEMENTAL JURISDICTION PURSUANT TO 28 U.S.C. § 1367(c).**

on all interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

MANNING LAW, APC
Joseph R. Manning, Jr.
20062 SW Birch Street, Ste. 200
Newport Beach, CA 92660
Ph: (949) 200-8755
Email:
DisabilityRights@manninglawoffice.com
**Attorneys for Plaintiff, George Avalos**

____ (By U.S. Mail) I caused each envelope, with postage fully prepaid, to be placed in the designated area for outgoing mail in accordance with this office's practice, whereby mail is deposited in a U.S. mailbox in the City of Fresno, California after the close of the day's business.

____ (By Facsimile) I caused this document to be delivered via facsimile to the numbers set forth below.

__X__ (By Electronic Service) - I caused a true and correct copy of the document(s) described above to be uploaded to the Court approved case management system, and served electronically to all parties listed above.

I declare under penalty of perjury under the law of the State of California that the foregoing is true and correct. Executed on May 13, 2021, at Fresno, California.

By:  __/s/ *Rachelle Taylor Golden*__
RACHELLE TAYLOR GOLDEN