**RACHELLE TAYLOR GOLDEN 295385**
Rachelle@GoldenADADefense.com
**GOLDEN LAW A.P.C.**
1100 W. Shaw Avenue, Suite 132
Fresno, California 93711
Telephone: (559) 878-3521

Attorneys for Defendant:
HPC BLACKSTONE INVESTORS, LP

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

* * *

| | |
|---|---|
| GEORGE AVALOS, an individual, | NO. 1:20-cv-01385-DAD-SKO |
| Plaintiff, | **DECLARATION OF MICHAEL BLUHM IN SUPPORT OF DEFENDANT, HPC BLACKSTONE INVESTORS, LP'S, MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, PURSUANT TO FRCP 12(b)(1) AS TO PLAINTIFF'S COMPLAINT AND REQUEST TO DECLINE SUPPLEMENTAL JURISDICTION PURSUANT TO 28 U.S.C. § 1367(c).** |
| vs. | |
| HPC BLACKSTONE INVESTORS, LP, a California limited partnership; and DOES 1-10, inclusive | |
| Defendants. | |
| | Date: June 15, 2021<br>Time: 9:30 a.m.<br>Courtroom: 5, 7th Floor |
| | Judge: Honorable Dale A. Drozd |

I, MICHAEL BLUHM, declare as follows:

1.  I am over the age of 18 years and am not a party to this Action. I have personal knowledge of the facts contained herein and if called as a witness, I could and would competently testify.

2.  I am a Certified Access Specialist ("CASp"), licensed by the State of California, as CASp Inspector No. 223. In order to become a CASp, I was subjected to rigorous studying

and testing processes and took an exam offered by the State of California which tested my knowledge under both California and federal accessibility design requirements.

3. In addition to my CASp certification, I have worked for over 20-years for T.A. Bluhm Associates Architecture as a Project Manager and Design Technician. My work included working in collaboration with Theo A. Bluhm, a licensed California architect since April of 1977, to design and/or direct contractors to alter, remodel, and modify existing sites and structures. Currently, I am the principal of CASp Inspected.

4. As a CASp, I am authorized by the State of California to inspect privately owned businesses to assess their compliance with state and federal requirements for access by persons with disabilities. As a CASp, I am required to perform my work in an objective and neutral fashion. I have conducted nearly 1,000 CASp inspections since I obtained my license. In the past, I have been retained by not only defense counsel but also plaintiff's counsel.

5. As a CASp Inspector, I am very familiar with and am competent in how to properly use and calibrate standard industry tools to measure elements in order to determine whether the elements meet the applicable accessibility design standard(s). These tools include, smart levels, gauges for measuring the operational pressure for doors and their closing speeds, gap tools to determine the width of gaps on ground surfaces, and measuring tapes.

6. Presently, I have been retained as a consultant and qualified expert in the matter known to me as: *Avalos v. HPC Blackstone Investors, LP*, *et al*; U.S. Eastern District Court Case Number: 1:20-cv-01385-DAD-SKO, by Defendant's attorney, Rachelle Taylor Golden. I accepted the assignment of consulting with the concrete contractor, Tosted Asphalt, to oversee the remediation work performed on the property located at 5618 N. Blackstone Avenue, in Fresno, California and which is informally known as Roger Dunn Golf Shop ("the Facility"). As a consultant and expert witness, I recognize that it is inappropriate for me to offer legal opinions and therefore I my testimony is based solely on the measurements that I took and my personal observations, and whether or not the measurements and observations meet the technical accessibility requirements of the 2019 California Building Code ("CBC").

///

7. Based upon my experience and knowledge of the various cycles of the CBC and the Americans with Disability Act Standards ("ADAS"), the 2019 CBC access requirements for places of public accommodations meet or exceed all access requirements of the 2010 ADAS as it relates to parking elements such as parking spaces.

8. My role is solely to measure the technical design elements at the Facility and analyze them in accordance with the Department of Justice's 2010 ADAS and the California Division of State Architect's 2019 CBC (collectively, "the Applicable Standards"), and identify whether the structural elements designated for persons with disabilities at the Facility meet the Applicable Standards. Chapter 11B of the 2019 CBC governs the accessible features and elements of places of public accommodation. Attached hereto as **Exhibit B** is a true and accurate copy of the relevant section of the 2019 CBC (see pg. 2 at Section 11B-302) and is incorporated herein by this reference. Attached hereto as **Exhibit C**, is a true and accurate copy of the relevant portion of the 2010 ADAS, (see pg. 3 at Section 302), and is incorporated herein by this reference.

9. Between December of 2020 and April of 2021, I personally visited the Facility on multiple occasions during the time the remediation was being performed. I observed the existing standard parking stalls be saw cut and the removal of asphalt, and observed the relocation of the formerly designated accessible parking stalls to its now current location. Both accessible parking stalls and the adjoining access aisle were constructed with concrete and which based upon my experience and knowledge, is a slip resistant material and is permanent. To remove concrete, it must be saw cut and jack hammered, to break it up. Removal of concrete, as I've personally observed, is not easily done and typically such a material remains in place permanently.

10. Based upon my experience and familiarity with how weather can take a toll on newly laid paint, on April 21, 2021, after the rainy and cold weather had passed for the season, I went to the Facility to observe whether the newly striped designed parking stalls remained intact. During this visit, I observed some chipped and cracked paint within the newly painted designated accessible parking stalls. I then instructed Tosted Asphalt to re-stripe the designated

accessible parking stalls so that there would no chips in the paint. On April 24, 2021, the date of my final visit to the Facility, I observed that the designed accessible parking stalls had been re-striped and that there are no chips in the paint.

11. As a result of the consultation services that I performed, the measurements I personally took, and upon my analysis of the Applicable Standards, the remediated elements designated to be accessible for persons with disabilities meet the current requirements as a result of the following:

a. The designated standard accessible parking stall measures 18-feet long, and 9-feet wide, as required by the 2019 CBC chapter 11B-502.2. Attached hereto as **Exhibit A** are true and accurate copies of the photographs that I took of the Facility during and after the time the remediation was being performed which accurately depict the measurements that I took and are incorporated herein by this reference. See **Exhibit B** at pg. 5 at Section 11B-502.2.

b. The designated van accessible parking stall measures 18-feet long and 9-feet wide, as required by the 2019 CBC chapter 11B-502.2. See **Exhibit B** at pg. 5 at Section 11B-502.2, "Exception." Attached hereto as **Exhibit D** are true and accurate copies of the photographs that I took of the Facility during and after the time the remediation was being performed which accurately reflect the measurements that I took and are incorporated herein by this reference.

  i. The 2010 ADAS 502.2 only requires that the width of a standard accessible parking stall be 8-feet wide, and the van accessible stall be 11-feet wide. See **Exhibit C**, at pg. 5 at Section 502.2. Therefore, the 2019 CBC is a more stringent standard as it requires that more space be provided for people who use a van accessible parking stall.

c. Upon the conclusion of my inspections, I determined that the access aisle is located in between the two designated accessible parking stalls and is at the same level as the accessible stalls it serves. It is the same length as the parking spaces on either side of it (e.g. 18-feet in length), and is 96-inches wide. Additionally, all areas with

   the accessible parking stalls and access aisle do not exceed 2.08% in slope in any direction, which is compliant with the requirements under section 11B-302 and 11B 502.4 of the 2019 CBC. See **Exhibit B**, at pg. 7 at Section 11B-502.4. See **Exhibit C**, at pg. 7 at Section 502.1, "Exception," and pg. 9 at Section 502.4, "Exception." Attached hereto as **Exhibit E** are true and accurate copies of the photographs that I took of the Facility during the time the remediation was being performed which accurately reflect the measurements that I performed and are incorporated herein by this reference.

   d. I observed the new concrete accessible spaces and determined that no openings exist within the accessible parking stalls and access aisle, because I instructed the concrete contractor to fill in all control/expansion joint openings so that they are at the same level with the surface of the stall and access aisle. There are no gaps within the concrete in accordance with section 302.3 of the 2019 CBC and the 2010 ADAS. See **Exhibit B**, at pg. 1 at Section 11B-302.3. See **Exhibit C**, at pg. 4 at Section 302.3.  Attached hereto as **Exhibit F** are true and accurate copies of the photograph that I took of the concrete fill material during the time the remediation was being performed which accurately reflects the conditions of the concrete and are incorporated herein by this reference.

   e. Other than the requirement of the designated accessible stalls having an International Symbol of Accessibility ("ISA"), the 2010 ADAS leaves the striping and marking requirements up to the local jurisdictions. See **Exhibit C**, at pg. 8 at Section 502.3.3 and pg. 9 at Section 502.6. Therefore, I relied on the 209 CBC to assess whether the Facility met the current applicable code requirements. According to the 2019 CBC, the access aisles shall be marked with a blue painted borderline around their perimeter. See **Exhibit B**, at pg. 6 at Section 11B-502.3.3. The area within the blue borderlines shall be marked with hatched lines a maximum of 36 inches on center in a color contrasting with that of the aisle surface, preferably blue and white. Id. The words "NO PARKING" shall be painted on the surface within each access aisle in

white letters a minimum of 12-inches in height and located to be visible from the adjacent vehicular way. Id. Throughout my many visits to the Facility during construction, I observed that the accessible parking stalls and access aisle are outlined in bright blue paint. I observed that the hatched lines are thirty-six inches on center, also in blue paint, and that the words "NO PARKING" are painted in white letters measuring 12-inches in height based upon the measurements that I took during my inspections. I also observed signage posted on the wall directly in front of the designated accessible parking stalls which contains all verbiage that is required by the 2019 CBC. Attached hereto as **Exhibit G** are true and accurate copies of the photographs that I took of the Facility during the time the remediation was being performed which accurately reflect the measurements that I performed and are incorporated herein by this reference.

f. During my many visits to the Facility, I observed that there is an International Symbol of Accessibility ("ISA") located on the ground surface in the designated parking stalls and was painted in white on a blue background as required by 2019 CBC and the 2010 ADAS. See **Exhibit B** at pg. 8 at Section 11B-703.7.2.1. See **Exhibit C**, at pg. 10 at Section 703.7.2. See **Exhibit G,** at pgs. 1 through 3 and 11 through 14.

g. During my inspections, I observed where the original designated accessible parking stall used to be and observed that the curb ramp protruded into the designated accessible access aisle. Attached hereto as **Exhibit H** are true and accurate copies of the photographs that I took of the Facility during the time the remediation was being performed which accurately reflect the conditions of the site that I observed and are incorporated herein by this reference. During the consultation services that I performed, I assisted Tosted Asphalt in selecting a place to relocate the accessible parking stalls so that a designated accessible parking stall could be created that did not have a ramp that protruded into the access aisle. While the original designated parking stall still remains, it is no longer designated as the accessible parking stall.

       The newly located and constructed designated accessible parking stalls meet all of the technical requirements of the 2019 CBC and does not have a protruding ramp.

   h. I also instructed Tosted Asphalt to paint over the formerly designated accessible parking stall with white striping so as to eliminate any confusion as whether it is to be used as an accessible stall. This includes the elimination of the accessible stall signage and stall and access aisle markings. See **Exhibit H**.

   i. During my supervision of the project, I observed that the location of the newly created designated accessible parking stalls required the then-existing standard, non-designated accessible parking stalls to be saw cut and demolished so that the proper slopes could obtained when constructing the new designated accessible parking stalls and adjoining access aisle. Additionally, I observed that the then-existing concrete curb that was located in the front of the then-existing standard stalls, be demolished so the new curb ramp could be constructed within the walkway, and so that it would not protrude into the new access aisle. After the demolition and creation of the new curb ramp was complete, I determined that it meets the 2019 CBC and the 2010 ADAS accessibility design requirements as set forth within the respective codes. See **Exhibit B** at pg. 3 at Section 11B-406, and pg. 4 at Figure 11B-406.2.2. See **Exhibit C**, at pg. 5 at Section 406. Attached hereto as **Exhibit I**, are true and accurate photographs that I took of the curb ramp took during the remediation of the project, and the measurements that I took, and are incorporated herein by this reference.

12. As of April 24, 2021, the date of my final inspection of the Facility, I determined that all of the accessibility improvements that were completed at the Facility meet the Applicable Standards.

13. The total cost for the consultation services that I performed throughout the remediation process was $925.00.

///

///

///

1  I declare under penalty of perjury of the laws of the State of California, the foregoing is true and correct, and that this declaration was executed on May 5, 2021.

By: /s/ *[signature]*
MICHAEL BLUHM

## PROOF OF SERVICE

I am employed in the County of Fresno, California; I am over the age of eighteen years and not a party to the within cause; my business address is: 1100 W. Shaw Avenue, Suite 132, Fresno, CA 93711.

On May 13, 2021, I served the foregoing document(s) described as:

**DEFENDANT, HPC BLACKSTONE INVESTORS, LP'S, NOTICE OF MOTION AND MOTION TO DISMISS UNDER F.R.C.P. RULE 12(b)(1) AS TO PLAINTIFF'S COMPLAINT**

on all interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

MANNING LAW, APC
Joseph R. Manning, Jr.
20062 SW Birch Street, Ste. 200
Newport Beach, CA 92660
Ph: (949) 200-8755
Email:
DisabilityRights@manninglawoffice.com
**Attorneys for Plaintiff, George Avalos**

☐ (BY FIRST CLASS MAIL) I am readily familiar with the business' practice for collection and processing of correspondence for mailing, and that correspondence, with postage thereon fully prepaid, will be deposited with the United States Postal Service on the date noted below in the ordinary course of business, at Fresno, California.

☐ (BY ELECTRONIC TRANSMISSION – by CM/ECF System) Notice of this filing will be sent by e-mail to all parties and the above-specified persons by operation of the Court's electronic filing CM/ECF system, which will send electronic notification of such filing to all counsel/parties.

☒ (BY ELECTRONIC TRANSMISSION) I caused the above-referenced document to be sent to the person(s) at the e-mail address(es) of the addressee(s) on the date stated thereon. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful. The electric notification address of the person making the service is Rachelle@GoldenADADefense.com

**EXECUTED ON May 13, 2021, at Fresno, California.**

☒ (FEDERAL) I declare that I am employed in the office of a member of the State of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

    /s/ *Rachelle Taylor Golden*
    RACHELLE TAYLOR GOLDEN